## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN EPSTEIN, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GENERAL MILLS, INC., | |
| Defendant. | |

Plaintiff Steven Epstein ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant General Mills, Inc. ("Defendant" or "General Mills"), for manufacturing, marketing and distributing the oat based cereal brand, Cheerios ("Products"), that contain dangerous levels of the chemical pesticide chlormequat chloride ("chlormequat"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## COMMON FACTUAL ALLEGATIONS

1.      General Mills is a leading producer, manufacturer, marketer, and seller of cereal brands, including the iconic Cheerios brand.  General Mills products, including Cheerios, are sold nationwide and internationally.

2.      But, unfortunately for consumers, the Products contain something that humans should never ingest: dangerously high levels of chlormequat, a pesticide that has been linked to disrupting fetal growth and harming the nervous system.

3.      Specifically, independent laboratory testing has revealed that the following

Cheerios products tested positive for the presence of chlormequat:



4.      Chlormequat is a plant growth pesticide that is used to control plant size by blocking hormones that stimulate growth prior to bloom.  When applied to growing oat and grain crops, it stops them from bending over and impeding on the harvesting process.

5.      Chlormequat is dangerous to human health if ingested, even at very low levels. Toxicological studies suggest that exposure to chlormequat can reduce fertility and harm the developing fetus at doses lower than those used by regulatory agencies to set allowable daily intake levels.  Chlormequat has also shown to delay puberty and impair the reproductive functions in mammals.

6.      General Mill's products do contain, or are at risk of containing, up to 100 parts per billion of chlormequat.  Defendant's Products packaging do not list chlormequat in the ingredient section, nor do they warn about the inclusion or potential inclusion of chlormequat in the Products.

7.      The Environmental Working Group ("EWG"), a non-profit run by scientists

dedicated to protecting public health, has advised a health benchmark of 30 parts per billion. According to the Group, 30 parts per billion is the most chlormequat someone can eat every day without facing potential health risks.

8.      No reasonable consumer would expect that a product would contain dangerous pesticides.  Reasonable consumers believe products they purchase are safe for oral ingestion and expect the ingredients listed accurately reflect what is within the product.  Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with this state.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District.  Additionally, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff Epstein purchased the Product in this District and was therefore injured in this District.

## PARTIES

12.      Plaintiff Steven Epstein is, and at all times relevant to this action has been, a resident of New Rochelle, New York.  In approximately January 2024, Mr. Epstein purchased Defendant's Regular Cheerios from a ShopRite store located in Westchester County, New York.

When Mr. Epstein made his purchase, he believed that the Product did not contain any dangerous chemicals.  Mr. Epstein's belief was based on his review of the Product's advertising, marketing, and listed ingredients he relied on in making his purchase.   Had Defendant disclosed on the label that the Products contained or risked containing chlormequat, and the harms that can result from ingesting chlormequat, he would not have purchased the Products, or at the very least, would have only been willing to pay significantly less.  As a direct result of Defendant's material misrepresentations and omissions, Mr. Epstein suffered, and continues to suffer, economic injuries.  Mr. Epstein would consider purchasing Defendant's Products in the future if Defendant removed chlormequat from them.

13.     In a test conducted by the lab Anresco, Defendant's Regular Cheerios, which Mr. Epstein purchased and consumed, showed to contain over 100 ppb of chlormequat present.  This is more than 70 ppb more than EWG's health advisory benchmark.

14.     Defendant General Mills is a Delaware corporation with its principal place of business in Golden Valley, Minnesota.  Defendant manufactures, markets, and distributes the Products throughout the United States.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

16.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased General Mills Cheerios Products (as defined herein) in New York during the Class

Period (the "New York Subclass" or "Subclass").

17.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

18.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a.   Whether Defendant is responsible for the labeling at issue;

   b.   Whether the labeling of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

   c.   Whether Defendant breached a warranty created through the marketing of its Products; and

   d.   Whether Defendant's conduct as set forth above injured Plaintiff and Class members.

19.     Plaintiff's claims are typical of the claims of the Class in that he was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

20.     The precise number of the Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

21.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions involving false advertising, and he intends to prosecute this action vigorously.

22.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments.  The substantive claims of Plaintiff and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws.  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits.  Trial of Plaintiff's and the Class members' claims together is manageable.  Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

24.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

25.     The prerequisites to maintaining a class action for equitable relief are met: By misrepresenting that the Products sold by Defendant contain or may contain the dangerous pesticide chlormequat, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

26.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

27.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

28.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
### Violations of the New York General Business Law § 349
### (On Behalf of Plaintiff and the New York Subclass)

29.     Plaintiff reallege and incorporate herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

30.     The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

31.     Defendant's failure to disclose that the Products contain, or risk containing, a dangerous pesticide that can affect human health is misleading and induced Plaintiff and Class members to purchase the Products when they otherwise would not have.

32.     Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("GBL"), which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

33.     Defendant's improper consumer-oriented conduct is misleading in a material way

in that it, inter alia, induced Plaintiff and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have been willing to pay as much.

34.     Defendant made the untrue and/or misleading representations and omissions willfully, wantonly, and with reckless disregard for the truth.

35.     Plaintiff and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

36.     Defendant's labelling induced Plaintiff and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

37.     As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

38.     By reason of the foregoing, Plaintiff and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 349(h).

<u>**COUNT II**</u>
**Violations of the New York General Business Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

39.     Plaintiff reallege and incorporate herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

40.     The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

41.     GBL § 350 provides: "False advertising in the conduct of any business, trade or

commerce or in the furnishing of any service in this state is hereby declared unlawful."

42.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

43.    Plaintiff and the members of the New York Subclass are consumers who purchased Defendant's Products in New York.

44.    As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

45.    Defendant's labeling, which failed to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of § 350.

46.    Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff and the members of the New York Subclass.

47.    As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products and/or would have purchased fewer of the Products; moreover, as a result of Defendant's conduct, Plaintiff and the other members of the New York Subclass received Products of less value than what they paid for.

By reason of the foregoing, Plaintiff and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 350-e(3).

**COUNT III**
**Breach of Implied Warranty of Merchantability**
**(on Behalf of Plaintiff and All Class Members)**

48.    Plaintiff realleges and reincorporate by reference all paragraphs alleged above.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

50.     Defendant, as the designer, manufacturer, distributor and seller, impliedly warranted that the Products were fit for their intended purpose in that the Products were safe to ingest.  Defendant did so with the intent to induce Plaintiff and proposed Class and Subclass members to purchase the Products.

51.     Defendant breached it implied warranty because the Products each contain, or risk containing, dangerously high levels of chlormequat.

52.     Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products had they known the Products each contain, or may contain, dangerously high levels of chlormequat, and they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain dangerously high levels of chlormequat.

**COUNT IV**
**Unjust Enrichment**
**(on Behalf of Plaintiff and All Class Members)**

53.     Plaintiff realleges and reincorporate by reference all paragraphs alleged above.

54.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

55.     Plaintiff and the proposed Class and Subclass members conferred benefits on Defendant by purchasing the Products.

56.     Defendant had knowledge of such benefits.

57.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the proposed Class and Subclass members' purchases of the Products.  Retention

of those moneys under these circumstances is unjust and inequitable because Defendant omitted

that the Products contain, or may contain, chlormequat, which have harmful effects on human

health.

58.     Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiff and proposed Class and Subclass members is unjust and inequitable, Defendant must

pay restitution to Plaintiff and the proposed Class and Subclass members for its unjust

enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request the Court:

a.      For an order certifying the nationwide Class and the New York Subclass under
Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as
representatives of the Class and New York Subclass and Plaintiff's attorneys as
Class Counsel to represent the Class and New York Subclass members;

b.      For an order declaring that Defendant's conduct violates the statutes referenced
herein;

c.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York
Subclass on all causes of action asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined
by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For an order enjoining Defendant from continuing the illegal practices detailed
herein and compelling Defendant to undertake a corrective advertising campaign;
and

h.      For an order awarding Plaintiff and the Class and New York Subclass their
reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  February 29, 2024                    Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**


                                             By:  ____/s _Joshua D. Arisohn_____
                                                       Joshua D. Arisohn

                                             Joshua D. Arisohn
                                             Caroline C. Donovan*
                                             1330 Avenue of the Americas, 32nd Floor
                                             New York, NY 10019
                                             Telephone: (646) 837-7150
                                             Facsimile: (212) 989-9163
                                             Email:  jarisohn@bursor.com
                                                       cdonovan@bursor.com

                                             *Admission forthcoming*

                                             *Attorneys for Plaintiff*